**Dorothy BLITZ, Plaintiff,**

v.

**Raymond J. DONOVAN, Defendant.**

Civ. A. No. 82–706.

United States District Court,
District of Columbia.

May 14, 1982.

---

Mark H. Lynch, Susan W. Shaffer, American Civil Liberties Union Foundation, Washington, D.C., Leonard Rubenstein, American Civil Liberties Union of Virginia, Washington, D.C., Michael Krinsky, Nat. Emergency Civil Liberties Committee, New York City, for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Stanley S. Harris, U.S. Atty., Richard K. Willard, Paul Blankenstein, Sheila Lieber, Stanley Alderson, Attys., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

This proceeding summons the application of a well-settled principle of constitutional law: when government decides to provide a benefit or an opportunity, it cannot condition the grant on the surrender of unrelated freedoms. In *Perry v. Sindermann*,[1] Justice Stewart, who authored the view of the Supreme Court, stated the principle forcefully:

> [The government] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a bene-

fit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." *Speiser v. Randall*, 357 U.S. 513, 526 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460]. Such interference with constitutional rights is impermissible.[2]

The plaintiff Mrs. Dorothy Blitz alleges in her complaint that a recent congressional enactment and its implementation by the Secretary of Labor ran afoul of the principle set forth in *Perry* and infringed upon her first amendment right of free speech. This Court agrees with her contentions and concludes that she is entitled to appropriate relief.

## BACKGROUND

The series of events supporting the plaintiff's claim are not disputed in any material respect. Mrs. Blitz is a member of the Communist Workers Party. In May 1980, she enrolled in an employment training program established under the Comprehensive Employment Training Act (CETA).[3] She resided in Martinsville, Virginia and the program was administered by the Virginia Employment Commission (VEC).[4] One year later, she had completed 600 of the required 700 hours in her course of study. At that time she obtained a leave of absence because of a pregnancy and anticipated childbirth.

In December 1981, the United States Congress enacted into law an amendment to an appropriations bill for fiscal year 1982. The enactment, Public Law 97–92,[5] provided that:

---

1. 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). In *Perry*, a state college's Board of Regents refused to rehire a professor who had been outspokenly critical of the Board's policies. The professor alleged that the nonrenewal of his contract violated his free speech rights. The Court held that the allegation presented a "bona fide constitutional claim." *Id.* at 598, 92 S.Ct. at 2698.

2. *Id.* at 597, 92 S.Ct. at 2697.

3. 29 U.S.C. § 801 *et seq.* (1982 Supp.).

4. The state or local government units, called "prime sponsors" under the Act, are responsible for carrying out CETA programs in their communities. 29 U.S.C. § 811(a); 20 C.F.R. §§ 676.2, 676.5 (1980).

5. Public Law 97–92 was a continuing resolution appropriating funds at specified levels for federal government programs that had not previ-

None of the funds appropriated or otherwise made available by this Act may be used, pursuant to the Comprehensive Employment Training Act, for the participation of individuals who publicly advocate the violent overthrow of the Federal Government, or who have within the past five years, publicly advocated the violent overthrow of the Federal Government.

The legislative history of the amendment left no doubt that it was specifically intended to exclude Mrs. Blitz from the CETA program because of her political beliefs and affiliations and because she expressed those beliefs in her community.[6] The enactment has since been referred to as the "Blitz Amendment."

On January 20, 1982, after the birth of her child, Mrs. Blitz reapplied to the Martinsville, Virginia CETA officials with the hope of completing her course of study. Although she was found eligible and qualified to pursue her training, she was told by a VEC representative that the "Blitz Amendment" presented problems as to her enrollment. The representative also informed the plaintiff that the VEC office was awaiting guidance from the Virginia Attorney General on the implementation of this amendment and could not enroll her until such guidance was received.

On January 24, 1982, Mrs. Blitz wrote the Virginia Attorney General requesting a prompt decision on whether she could participate in the program. She was advised on February 15 that the question of her eligibility was still under review. The response also noted that "[t]he Labor Department has declined to prepare field instructions, which has left the various states very much on their own in implementing the amendment."[7]

In late February 1982, the VEC issued a regulation requiring all CETA applicants to respond with a "yes" or "no" answer to the question: "Do you now, or have you within the past five years, publicly advocated the violent overthrow of the Federal Government?" The regulation provided that if the applicant supplied a "yes" answer or refused to answer he would be disqualified from eligibility and participation in the CETA program. It further provided that if the applicant gave an equivocal answer, the matter was to be reported to the Central Office of the Virginia Employment Commission, and the applicant would remain disqualified until that office made a further determination.

Mrs. Blitz refused to answer the question, stating that she had a right to participate in CETA programs "no matter what" her political beliefs and associations. According to her affidavit, she believes:

that the United States government will one day be overthrown in a popular, domestic revolution because the government does not serve the interests of the American people. I also believe that only the American people will be able to overthrow the government and that they will do so when it becomes evident that it is in their best interests to do so. I believe that this revolution may have to be accomplished by force if necessary, and that the American people have an inalienable

ously been funded by separate appropriations bills. On October 6, 1981, the House of Representatives passed the challenged provision, Section 514, H.R. 4560, 95th Cong., 1st Sess. (1981). 127 Cong. Rec. H7089, H7097 (daily ed. October 6, 1981). The Senate Committee on Appropriations reported to the Senate the same substantive provision on November 9, 1981, S.Rep. No. 97–268, 97th Cong., 1st Sess. (1981). 127 Cong.Rec. S13145 (daily ed. Nov. 9, 1981). Under section 101(a)(3) of Pub.L. 97–92, when a provision "has been reported to a House but not passed by that House as of December 15, 1981, it shall be deemed as having been passed by that House...." Thus, the amendment was effective during the period of

the continuing resolution, which expired March 31, 1982. The government stated at oral argument that on March 31, 1982, Congress extended the continuing resolution, including the challenged amendment, through September 30, 1982.

**6.** 126 Cong.Rec. H10572 (daily ed., Nov. 13, 1980); 126 Cong.Rec. S16192 (daily ed., Dec. 11, 1980); 126 Cong.Rec. H12386 (daily ed., Dec. 12, 1980); 126 Cong.Rec. S16742–43 (daily ed., Dec. 15, 1980).

**7.** Exhibit A, Second Blitz Affidavit (March 23, 1982).

right to such a revolution as a defense to governmental oppression.

The plaintiff also stated in her affidavit that she does "not advocate and [has] never advocated, violent revolution at the present time because the majority of Americans do not yet understand that revolution, violent or otherwise, is in their best interests."[8]

Because she could not, under the state regulation, resume her CETA training, Mrs. Blitz sought an injunction ordering the Secretary of Labor to direct the VEC to process her application to the CETA program without reference to her political affiliations or beliefs. She also requested a judgment declaring that the amendment infringes her right of free speech in violation of the first amendment and is a penalty directed specifically at her, thereby violating the Bill of Attainder Clause.[9]

The parties agree that the issues presented here may be resolved on cross-motions for summary judgment. The Court has considered the memoranda of points and authorities and the argument of counsel and concludes that the congressional enactment violates basic first amendment principles. Mrs. Blitz should be awarded summary judgment. The reasons to support that determination are presented in the following analysis.

## LEGAL ANALYSIS

In response to Mrs. Blitz's complaint, the Secretary of Labor advances a two-pronged argument: first, that this Court lacks jurisdiction because she failed to exhaust the administrative remedies provided by the CETA; second, that the "Blitz Amendment," as interpreted by the Secretary, is constitutional.

### A.

*Jurisdiction.* The defendant argues that specific provisions for administrative and judicial review under the CETA preclude jurisdiction over this action in district court. Under the Act, a prime sponsor such as the VEC must establish and maintain "a grievance procedure, including provisions for hearings within 30 days after the filing of a grievance, and for handling complaints about the program arising from its participants, subgrantees, contractors, and other interested persons." 29 U.S.C. § 816(a)(1). After exhausting the grievance system, an interested person or organization may submit a complaint to the Secretary of Labor who must investigate, hold a hearing if necessary, and render a final decision on the matter. *Id.* at § 816(b). The plaintiff, it is argued, failed to pursue her administrative remedies; had she done so, the court of appeals, not the district court, would have had jurisdiction to review the administrative decision. *Id.* at § 817(a).

■ The long-settled rationale for the doctrine of exhaustion is that the administrative agency must be afforded an opportunity to correct its alleged wrongful action. The reasons for the doctrine as outlined by the Supreme Court in *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975), are to prevent premature interference with agency processes, to afford parties and the courts the benefit of agency experience and expertise, to compile an adequate record for judicial review, and to afford an opportunity for the agency to correct its own errors. While these are strong policy reasons for the exhaustion requirement, those reasons must be examined and reviewed in light of the circumstances presented in a given situation. *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *Association of National Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1156 (D.C. Cir. 1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980).

■ In this proceeding, application of the doctrine would be entirely inappropriate. The expertise of the Department of Labor in the administration of the CETA program is of doubtful quality in the resolution of a constitutional challenge where issues are concerned solely with the sensitive area of

---

**8.** Blitz Affidavit ¶¶ 11, 14 (March 10, 1982). **9.** U.S.Const.Art. I, § 9.

the speech clause of the first amendment. Indeed, it has been noted that "adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies." *Oestereich v. Selective Service Local Board*, 393 U.S. 233, 242, 89 S.Ct. 414, 419, 21 L.Ed.2d 402 (1968) (Harlan, J., concurring). *See also, Weinberger v. Salfi*, 422 U.S. at 765, 95 S.Ct. at 2466; *Public Utilities Commission of California v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). And our own Court of Appeals has recognized that a party may "bypass established avenues for review within the agency ... where the agency has very clearly violated an important constitutional or statutory right." *Fitzgerald v. Hampton*, 467 F.2d 755 (D.C. Cir. 1972).

The Act itself does not require an administrative determination of constitutional claims. Indeed, a similar exhaustion argument was rejected by the Second Circuit in *Hark v. Dragon*, 611 F.2d 11 (2d Cir. 1973), when a CETA worker brought an action claiming that a state's durational employment policies deprived him and others similarly situated of their constitutional rights to equal protection and due process. Because the constitutional concerns were "sharply defined" and "purely legal," the exhaustion claim was quickly rejected. *Id.* at 14. *See also, CETA Workers' Organizing Committee v. City of New York*, 617 F.2d 926, 934 n.6 (2d Cir. 1980). Similarly, the sole question here is the "purely legal" one of the constitutionality of a congressional enactment.

■ The Secretary nonetheless claims that, as will be seen below, he has interpreted the amendment in such a way as to insure its constitutionality, and thus the plaintiff's dispute—if one remains at all—is solely with the VEC. This Court discounts the legal significance of the Secretary's interpretation and remains concerned with the constitutional question. But even if the Secretary's position were correct, administrative exhaustion would still not be required. The Secretary has failed to provide

the VEC with any guidance as to the implementation of this amendment, even though he is required to ensure that CETA programs are carried out in compliance with the Act. 29 U.S.C. § 814(c)(1). As a result, the Virginia officials have merely applied the plain language of the amendment. Mrs. Blitz's action, then, is properly construed as challenging the Secretary's failure to insist that this amendment is implemented in a fashion consistent with the first amendment. The administrative remedies allegedly available to the plaintiff apply to disputes between a prime sponsor and a CETA employee, not between an employee and the Secretary. *See* 29 U.S.C. § 816(b). Thus, a suit in federal district court is not jurisdictionally defective.

### B.

■ *The Constitutional Issues.* Perhaps the most telling indictment of the constitutionality of the amendment is reflected in the position adopted by the Secretary. He does not contend that a plain reading of the amendment could possibly withstand constitutional scrutiny. The reason is simple. The first amendment clearly bars the government from penalizing mere advocacy of any idea, including violent revolution. The Supreme Court in *Brandenburg v. Ohio* unanimously agreed that:

> [T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.

395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969). *See also, Healy v. James*, 408 U.S. 169, 188, 92 S.Ct. 2338, 2349, 33 L.Ed.2d 266 (1972)—"the critical line heretofore drawn for determining the permissibility of regulation is the line between mere advocacy and advocacy 'directed to inciting or producing imminent lawless action and ... likely to incite or pro-

duce such action.' " [10] The "Blitz Amendment" does not draw a line between mere advocacy and advocacy which incites and is likely to produce violent action and cannot, therefore, withstand the *Brandenburg* test.

Confronted with the facial invalidity of the enactment, the government contends that Congress must have intended to exclude from the CETA program only those applicants whose speech falls outside of the first amendment parameters established in *Brandenburg*.[11] It suggests that the term "advocate" has taken on a specialized meaning in the context of federal legislation.[12] The Secretary of Labor interprets the amendment as barring from participation in CETA only those persons who advocate the use of force or violence to overthrow the government "where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." [13] In other words, the Secretary has rewritten the amendment in order to conform to the *Brandenburg* test.

█ A number of problems beset the Secretary's position, none of which, unfortunately, are fully explored in the parties' pleadings. We first note that the Secretary's interpretation of the "Blitz Amendment" does not conclusively settle the constitutional question. The Administrative Procedure Act (APA), requires advance publication and opportunity for public participation for all rules except "interpretative rules, general statements of policy, or rules of agency organization, procedure or practice." 5 U.S.C. §§ 551, 553(d)(2).[14] No

such notice and comment was provided in this case, and thus the Secretary's assessment of the amendment is best characterized as an "interpretative rule." Indeed, at oral argument, government counsel suggested that the Secretary's statements concerning the amendment might properly be so characterized.[15] The Court agrees, finding that no other exceptions to the APA's notice and comment requirements are applicable here.

Interpretative rules, however, do not have the same legal significance as legislative rules. As Judge Bazelon stated in *Batterton v. Marshall*, 648 F.2d 694, 702 (D.C. Cir. 1980):

> Such actions or statements are not determinative of issues or rights addressed. They express the agency's intended course of action, its tentative view of the meaning of a particular statutory term, or internal house-keeping measures organizing agency activities. They do not, however, foreclose alternate courses of action or conclusively affect rights of private parties. . . . Unlike legislative rules, non-binding agency statements carry no more weight on judicial review than their inherent persuasiveness commands.

█ The Secretary's revision of the amendment, then, lacks "the force of law." *Id.* at 701. There is no requirement, as matters now stand, that the VEC apply the Secretary's interpretation or even that the Secretary adhere to the interpretation set forth in the pleadings. Moreover, the sole

---

**10.** This principle has been explicitly held applicable to regulatory schemes that determine eligibility for public employment. *Communist Party of Indiana v. Whitcomb*, 414 U.S. 441, 448, 94 S.Ct. 656, 661, 38 L.Ed.2d 635 (1974) (cases cited therein).

**11.** The government makes no claim that individuals who advocate the violent overthrow of the government are excluded from CETA employment on that ground that such persons interfere with the mission of the agency. *Cf., U.S. Civil Service Commission v. National Ass'n of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

**12.** *See* page 1127 *infra,* note 17.

**13.** Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Preliminary Injunction and in Support of Defendant's Motion to Dismiss at 14.

**14.** The required notice and comment may also be avoided "for good cause found and published within the rule", 5 U.S.C. § 553(d)(3), and for "a substantive rule which grants an exception or relieves a restriction." 5 U.S.C. § 553(d)(1). Neither of these provisions could apply here.

**15.** Transcript of Hearing (April 1, 1982) at 8.

expression of the Secretary's view of the amendment is contained within the pleadings filed in this litigation. The failure of the Secretary to provide so much as an affidavit on this issue diminishes, in this Court's view, the legal significance of his interpretation still further. The proper focus for judicial review, then, is upon the amendment itself, and as already noted, that enactment is clearly unconstitutional.

Second, even if the Secretary's interpretation were of greater legal significance than the APA dictates, the congressional debate on the amendment cannot be reconciled with the Secretary's interpretation. The legislative history affords no support to the Secretary's interpretation. The legislation was introduced in the House by Congressman Dan Daniel, the representative from Mrs. Blitz's district.[16] He urged its passage stating: "I do not believe it was the intention of Congress that individuals whose stated policy is the overthrow of our system be the beneficiary of that system." 126 Cong.Rec. H1052 (daily ed., Nov. 13, 1980). Similarly, Senator Hollings, who introduced and argued for the amendment in the Senate, urged that "we want to make absolutely certain that training program moneys are not used to train and employ those who would advocate the violent overthrow of the U.S. Government." 126 Cong. Rec. S16192 (daily ed., Dec. 11, 1980). No

congressman suggested the limitation now proposed by the Secretary. The Secretary's interpretation is simply woven from whole cloth, without any basis in the statutory history.[17]

 It is an unquestioned rule of law that "regulations, in order to be valid, must be consistent with the statute under which they are promulgated." *United States v. Larionoff*, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977). The Secretary's interpretation is not consistent with the statute. Nor can this Court take it upon itself to narrow the amendment so as to render it free from constitutional defect. *See Aptheker v. Secretary of State*, 378 U.S. 500, 515, 84 S.Ct. 1659, 1668, 12 L.Ed.2d 992 (1964). To limit the amendment as the Secretary suggests "would be to make a new law, not to enforce an old one. This is no part of our duty." *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563 (1876).[18]

 Finally, even if the Secretary's interpretation were a valid and forceful legal exercise, an array of constitutional problems would remain.[19] The Secretary's revision totally fails to provide the procedural safeguards essential in the first amendment area. For instance, the review procedure must assure prompt final administrative or judicial decision to minimize the

**16.** The plaintiff's Bill of Attainder Clause argument is based on the repeated statements of Congressman Daniel and other legislators of the need to bar persons such as Mrs. Blitz from the CETA program. *See supra,* n.6. This Court need not address this argument because of the finding that the amendment violates the first amendment.

**17.** The absence of any support for the Secretary's interpretation distinguishes this case from that relied upon by the Secretary, *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). There, the Court interpreted the Smith Act as drawing a line between protected advocacy of doctrine and unprotected advocacy of action. However, the basis for that distinction was the finding that "the legislative history of the Smith Act and related bills shows beyond all question that Congress was aware of the distinction between the advocacy or teaching of abstract doctrine and the advocacy or teaching of action, and that it did not

intend to disregard it." *Id.* at 319, 77 S.Ct. at 1077. Indeed, the congressional debates included explicit references to Supreme Court cases which construed the term "advocacy." *Id.* No such legislative history exists in this case.

**18.** *See also, Scales v. United States*, 367 U.S. 203, 211, 81 S.Ct. 1469, 1477, 6 L.Ed.2d 782 (1961) ("[a]lthough this Court will often strain to construe legislation so as to save it against constitutional attack, it must not . . . carry this to the point of perverting the purpose of a statute").

**19.** These issues were not raised in the plaintiff's pleadings. However, in light of the importance of the principles of constitutional law raised by this case, this Court feels compelled to demonstrate, even in a rather preliminary fashion, how the Secretary's position in this case conflicts with constitutional dogma.

deterrent effect of an erroneous denial of a job, *Freedman v. State of Maryland,* 380 U.S. 51, 58, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965), and the burden of proving that the applicant participated in unprotected expression must rest on the government, *Speiser v. Randall,* 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958). In addition, the Secretary's approach erroneously assumes that satisfaction of the *Brandenburg* test eliminates a further inquiry into the constitutionality of excluding government benefits on the basis of unprotected speech. While the government may, under *Brandenburg,* prohibit certain types of advocacy, a separate constitutional question is raised as to whether that unprotected advocacy can supply the basis for denial of a government benefit. *Cf., Pickering v. Board of Education,* 391 U.S. 563, 574 n.6, 88 S.Ct. 1731, 1738 n.6, 20 L.Ed.2d 811 (1968). At the very least, fifth amendment considerations require a showing that the denial of a benefit to a certain class of individuals is reasonable and in furtherance of a valid governmental purpose. *See e.g., Morey v. Doud,* 354 U.S. 457, 463–464, 77 S.Ct. 1344, 1348–49, 1 L.Ed.2d 1485 (1957).

This Court perceives no rational objective whatsoever which is furthered by the imposition of this barrier to employment training. The legislative history suggests that the amendment was enacted because Congress did "not want people who are paid by the government to advocate the violent overthrow of our government." 127 Cong. Rec. S16742 (Dec. 15, 1980) (statement of Senator Proxmire). But while CETA workers who advocate the violent overthrow of the government might be ingrates, the Constitution protects them as well as the appreciative.

The admonition of Justice Frankfurter voiced more than 30 years ago is applicable here: "Congress may withhold all sorts of facilities for a better life, but if it affords them it cannot make them available in an obviously arbitrary way or exact surrender of freedoms unrelated to the purpose of the facilities." *American Communications Ass'n v. Douds,* 339 U.S. 382, 402, 70 S.Ct. 674, 685, 94 L.Ed. 925 (1950). In enacting the "Blitz Amendment", the Congress violated this basic principle of constitutional law.

The plaintiff is entitled to appropriate relief. An order and judgment consistent with this opinion will be filed.

## ORDER AND JUDGMENT

In accordance with the accompanying Memorandum Opinion, it is this 14th day of May, 1982

ORDERED that defendant's motion for summary judgment be, and hereby is, denied, and it is

FURTHER ORDERED that plaintiff's motion for summary judgment be, and hereby is, granted.

Judgment is entered for the plaintiff, Dorothy Blitz, and it is

DECLARED that the amendment to Public Law 97–92 which bars the appropriation of moneys pursuant to the Comprehensive Employment and Training Act (CETA) for the participation of individuals who publicly advocate the violent overthrow of the federal government violates the first amendment to the United States Constitution, and it is

FURTHER ORDERED that the Secretary of Labor shall immediately undertake all appropriate steps to insure that the plaintiff's application for employment training under the CETA is processed without regard to her political affiliations or beliefs.