### DAEDALUS ENTERPRISES, INC., Plaintiff,

v.

### Malcolm BALDRIGE, et al., Defendants.

Civ. A. No. 83–980.

United States District Court,
District of Columbia.

May 31, 1983.

Derek I. Meier, Washington, D.C., for plaintiff.

Judith Bartnoff, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge.

Section 10 of the Export Administration Act of 1979, 50 U.S.C. App. § 2409, provides for a timetable which governs the Department of Commerce's processing of applications for certain export licenses. Plaintiff, Daedalus Enterprises, Inc. ("Däedalus"), brings this suit to enjoin the Department of Commerce's noncompliance with the Export Administration Act's timetable. Defendants are Malcolm Baldrige, the Secretary of Commerce ("the Secretary"); Lionel H. Olmer, the Under Secretary for International Trade, Department of Commerce; and Lawrence J. Brady, Assistant Secretary for Trade Administration, Department of Commerce. Based on the facts as stipulated by the parties, the Court grants plaintiff's motion for summary judgment,[1] and denies the defendants' motion to dismiss or for summary judgment.[2]

### 1. The Export Administration Act

Under the authority of the Export Administration Act of 1979 ("the Act"), 50 U.S.C. App. §§ 2401–2420, as amended by the Export Administration Act of 1981, Pub.L. 97–45, the Department of Commerce ("the Department") administers export controls in consultation with other United States agencies and departments. Under Section 10(h), whenever the export license being sought implicates national security, the application for the export license—after being referred to the other agencies' and departments—is referred by the Secretary for multilateral review to the Coordinating Committee ("COCOM"), which includes representatives of the NATO countries plus Japan, less Iceland. The timetable for the entire application process, including the referral to the United States agencies and COCOM when necessary, is all governed by Section 10 of the Act.

Section 10(b) of the Act provides that, within 10 days of receipt of a properly completed application, the Secretary is required to acknowledge receipt of the application, advise the applicant of the procedures required by Section 10, determine if referral to any other department or agency is necessary, and inform the applicant of

1. Filed April 11, 1983.

2. Filed April 26, 1983.

any such department or agency to which the application will be referred. Where referral is necessary, Section 10(d) requires the Secretary to refer the application, together with all necessary analysis and recommendations of the Department, concurrently to all such departments or agencies within 30 days after submission of the application. Section 10(e) requires such other departments or agencies to submit to the Secretary, within 30 days after receipt of the application, any information or recommendations requested with respect to the application, unless a 30-day extension is requested. If any such department or agency does not submit its recommendations within the prescribed 30 days (or 60 days if an extension is requested) it "shall be deemed by the Secretary to have no objection to the approval of such application."

Section 10(f) requires the Secretary to formally issue or deny the license within 90 days after receipt of the recommendations of the other departments or agencies, after affording the applicant the opportunity to reply to any negative considerations or recommendations received by the Secretary from those departments or agencies. Thus, when an application is referred to other departments or agencies, the license must be issued or denied within 180 days of the application.[3]

An exception to this 180-day limit is provided for in section 10(h), in instances where multilateral review by COCOM is necessary. In such instances the Secretary approves the issuance of the license within the 180-day period, but then notifies the applicant that the license will be issued only upon approval of the application after multilateral review by COCOM. COCOM's review is provided for to insure that the foreign allies of the United States have no objection to the issuance of the license. If multilateral review has not resulted in a determination within 60 days—i.e., within

240 days of the filing of the application—the Secretary's approval of the license shall be final and the license shall be issued, unless the Secretary determines that issuance of the license would prove detrimental to the national security of the United States. If the Secretary makes such a determination, he is required to notify the applicant and Congress of the determination, the reasons for the determination, the reasons for which the multilateral review could not be concluded within the prescribed 60-day period, and the actions planned or being taken by the United States Government to secure conclusion of the multilateral review. Furthermore, at the end of every 60-day period, after such notification to Congress, the Secretary is required to advise the applicant and Congress of the status of the application, and to report to Congress in detail on the reasons for the further delay and any further actions being taken by the United States Government to secure conclusion of the multilateral review.

In short, unless the special extension provisions involving notification of the applicant and Congress are invoked, the entire process must be completed within 180 days in instances of referral to other departments or agencies, and within 240 days in instances of referral to COCOM.

Section 10(j)(2) provides that if any action prescribed in Section 10 is not taken within the time periods established therein, the applicant may petition the Secretary to request compliance with the requirements of Section 10, and "the Secretary shall take immediate steps to correct the situation giving rise to the petition and shall immediately notify the applicant of such steps." If the processing of the application has not been brought into conformity with the requirements of Section 10 within 30 days after the applicant's petition, Section (j)(3) provides that

---

**3.** Section 10(f)(4) permits the Secretary to extend this time period, if he determines that a particular application is of exceptional importance and complexity, and that additional time is required to permit negotiations to modify the application. The Secretary is required to notify

both Congress and the applicant of any such extension and the reasons therefor. The Secretary has stipulated that he has not made the determination necessary for an extension of time in this case under Section 10(f)(4).

the applicant may bring an action in an appropriate United States district court for a restraining order, temporary or permanent injunction, or other appropriate relief, to require compliance with the requirements of this section. The United States district courts shall have jurisdiction to provide such relief, as appropriate.

50 U.S.C. App. § 2409(j)(3).

### 2. The Facts

Daedalus engages in research, development, manufacture and service in the field of remote sensing of the environment. Within this field, Daedalus specializes in airborne infrared and visual line-scanning devices and associated data analysis equipment. Daedalus manufactures infrared equipment, conducts surveys using such equipment, and analyzes data derived therefrom for governmental and commercial clients. An integral component of the Daedalus system is a magnetic instrumentation tape recorder.

On December 22, 1980, after meeting with representatives of the Romanian government, Daedalus entered into an agreement with Romania whereby Romania agreed to purchase a Daedalus multispectral airborne scanner. Romania is a country to which exports are controlled for national security purposes.

Soon after entering into the agreement, Daedalus filed an application with the Department for a license to export the scanner. On January 6, 1981, the Department acknowledged receipt of the application, assigned it license application No. A530489, and indicated on the acknowledgment form that the application would be referred to the Departments of State, Defense and Energy, and would also require multilateral review by COCOM. However, despite the 180-day timetable, the Department did not refer the application to COCOM until November 3, 1981, some four months beyond the 180-day period. Prior to November 3, 1981, the Department had referred the application to the Departments of State, Defense and Energy for their review and recommendations.

Following the belated referral to COCOM, the Department again delayed beyond the Act's time constraints. Despite Section 10(h)'s 60-day period for COCOM review, it was not until March 16, 1982— 133 days later—that the Department informed Daedalus as to the progress of COCOM's multilateral review. In its letter of March 16, the Department notified Daedalus that pursuant to Section 10(h) the Secretary had determined that although the license application had been pending in COCOM for over 60 days, issuance of the export license before multilateral review was completed would prove detrimental to the security of the United States.

Though Section 10(h) does provide that with such a determination on the part of the Secretary the 60-day period (240 days from the filing of the application) could be extended, such an extension must be accompanied by a report to Congress and subsequent reports at 60-day intervals to the applicant and Congress. No such reports were filed by the Department.

In the interim, on July 21, 1981, while the license review process was underway, Daedalus filed a second application, for a license for the export of ground station equipment associated with the airborne equipment listed in the earlier license application. On July 24, 1981, the Department acknowledged receipt of the second application, assigned it license application No. A567746, and indicated on the acknowledgment form that this second application would be referred to the Departments of Defense and Energy, and would also require multilateral review by COCOM.

Action on this second application differed from the processing of the earlier application. In contrast to the lack of response by other United States departments to the earlier application, Defense objected to the issuance of the second license. Thus, on November 16, 1981, the Department sent a letter to Daedalus referring to the negative considerations raised by Defense regarding the second application, No. A567746, based on Defense's concern about the strategic risks raised by the performance capabilities of the equipment.

Because of some communication problems that appear to have been the fault of neither party, Daedalus did not respond until February 3, 1982, to the negative consideration letter regarding the second license application, No. A567746. Daedalus pointed out that the first application, No. A530489, which had received inter-agency approval and had been forwarded to COCOM for review, contained a recorder with capabilities superior to the equipment covered by the second license application. Daedalus requested that Defense review its position on the second license application in light of its previous position regarding the first license application.

As of the filing of the pleadings on this motion for summary judgment, the Department has neither referred the second application to COCOM nor issued a decision to grant or deny the licenses requested in the two applications.

In early 1983, Daedalus requested a meeting with Lawrence J. Brady, the Department's Assistant Secretary for Trade Administration, to discuss both Daedalus license applications. Mr. Brady and other Department personnel met with Alan Parker, President of Daedalus. By letter dated February 24, 1983, Vincent DeCain, Deputy to the Deputy Assistant Secretary of Export Administration, informed Daedalus that, because of interagency disagreement, both applications were in the process of being elevated to the Export Administration Review Board and informed Daedalus that it could discuss any remaining technical matters with interested Federal agencies.

Daedalus pursued the matter further. Its president, Alan Parker, met with Mr. DeCain on March 2, 1983, who arranged a subsequent meeting with a representative of the Defense Department on March 9. Despite those efforts, the Department has yet to take any final action.

In short, some 29 months after the filing of the first license application, and some 21 months after the filing of the second application, the Secretary has not reached a final decision to grant or deny the licenses.

### 3. Analysis

In its motion to dismiss or for summary judgment, the Secretary presents two arguments in support of its contention that despite the egregious delay this Court should not reach the merits of this lawsuit: first, that this is an inappropriate case for judicial intervention; second, that plaintiff has not exhausted its administrative remedies.

The first argument can be dealt with quickly. The Secretary contends that a number of cases dealing with agency delay arising under the Administrative Procedure Act (APA), 5 U.S.C. § 706(1) stand for the proposition that unless the delay is unreasonable, injunctive relief is inappropriate. *Cf. Environmental Defense Fund, Inc. v. Hardin,* 428 F.2d 1093, 1099 (D.C.Cir.1970); *Blankenship v. Secretary of HEW,* 587 F.2d 329, 334–36 (6th Cir.1978). Here, the argument runs, the delay was understandable, in light of the multi-tiered process of review stemming from the foreign policy and national security considerations implicated.

The difficulty with that argument, as the Secretary himself concedes, is that this case does not arise under the APA, a statute bereft of the strict time constraints of the Act. Any role that the concept of "reasonable delay" may play in the context of the APA is irrelevant to the Act, where Congress explicitly set forth a detailed schedule. "[I]n a statutory scheme in which Congress carefully prescribed a series of deadlines measured by numbers of days— rather than months or years—we may not simply interpret an additional ... period into the procedural scheme." *Mohasco Corp. v. Silver,* 447 U.S. 807, 825–26, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980).

The Secretary's stronger argument is that plaintiff has not exhausted the statutorily prescribed administrative remedies. Under Section 10(j)(2) of the Act, an applicant may file a petition with the Secretary requesting compliance with the time periods established by the Act. Only after first seeking recourse by way of this petition may the applicant then seek judicial review under Section 10(j)(3). The Act's regulations provide that the petition be in writing. 15 C.F.R. § 370.13(m)(3). Daedalus has

never filed a written petition pursuant to Section 10(j)(2) and its regulations.

 Nonetheless, the fact that Daedalus failed to submit a written petition does not bar its claim here. The doctrine of exhaustion is intended, in part, to afford the administrative agency the first opportunity to correct any error. When the agency has already made it abundantly obvious that it would not correct the error and would not conform its actions with the strictures of the Act, it would be meaningless to compel the hapless plaintiff to pursue further administrative remedies simply for form's sake. *See e.g., McKart v. United States,* 395 U.S. 185, 201, 89 S.Ct. 1657, 1666–1667, 23 L.Ed.2d 194 (1969) (the exhaustion remedy need not "be applied blindly in every case"); *Baxter v. Claytor,* 652 F.2d 181, 185 (D.C.Cir.1981); *Blitz v. Donovan,* 538 F.Supp. 1119, 1124 (D.D.C.1982).

Here, plaintiff sought repeatedly to ascertain the status of the application. Plaintiff's president met with defendant Brady and Mr. DeCain seeking an explanation for the interminable delay. The Court will not force plaintiff to submit to the futile formality of petitioning the same officials yet again.

An appropriate Order accompanies this Memorandum Opinion.