Dorothy BLITZ

v.

Raymond J. DONOVAN, Secretary of
Labor, Appellant.

No. 83–2027.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 17, 1984.

Decided Aug. 7, 1984.

Michael J. Singer, Atty., U.S. Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., and Michael F. Hertz, Atty., U.S. Dept. of Justice, Washington, D.C., were on the brief, for appellant. Richard K. Willard, Acting Asst. Atty. Gen., and Joseph E. diGenova, U.S. Atty., Washington, D.C., also entered appearances for appellant.

Mark H. Lynch, Washington, D.C., with whom Susan W. Shaffer, Washington, D.C., was on the brief, for appellee.

Before TAMM and EDWARDS, Circuit Judges, and CLEMENT F. HAYNS-WORTH, Jr.,* Senior Circuit Judge for the Fourth Circuit.

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

Opinion for the court filed by Circuit Judge TAMM.

Separate opinion filed by Circuit Judge, HARRY T. EDWARDS, concurring in part and dissenting in part.

TAMM, Circuit Judge:

This appeal arises from the district court's award of attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (1982). 569 F.Supp. 58 (D.D.C.1983). The award followed from the district court's determination that the litigation position of the Secretary of Labor (Secretary) in a suit involving restricted participation under the Comprehensive Employment and Training Act (CETA), 29 U.S.C. §§ 801–999 (Supp. V 1981), lacked substantial justification. Because we find that the Secretary's litigation position was substantially justified, we reverse the district court's award of attorney's fees.

## I. BACKGROUND

On December 15, 1981, Congress restricted participation in programs funded under CETA. Pub.L. No. 97–92, § 101(a)(3), 95 Stat. 1183 (1981) (enacting by reference H.R. 4560, 97th Cong., 1st Sess. § 514 (1981)) [hereinafter cited as section 514]. Section 514 excluded any individual from a CETA program "who publicly advocate[d] the violent overthrow of the Federal Government or who [had], within the past five years, publicly advocated the violent overthrow of the Federal Government." Id.[1] In February 1982, the Virginia Employment Commission (VEC) implemented section 514 by requiring all applicants to answer the following question: "Do you now, or have you within the past five years, publicly advocated the violent overthrow of the Federal Government?" Blitz v. Donovan, 538 F.Supp. 1119, 1123 (D.D.C.1982), vacated, 459 U.S. 1095, 103 S.Ct. 711, 74 L.Ed.2d 943 (1983). VEC further

1. Section 514 expired on September 30, 1983. Pub.L. No. 97–161, 96 Stat. 22 (1982); Pub.L. No. 97–276, 96 Stat. 1204 (1982); Pub.L. No. 97–300, 96 Stat. 1354 (1982).

specified that any applicant who answered the question affirmatively or refused to answer would not qualify for the CETA program. *Id.*

In January 1982, Ms. Dorothy Blitz sought readmission after a leave of absence to a CETA program sponsored by VEC. Ms. Blitz refused to disclose on her application whether she publicly advocated violent overthrow of the federal government. On February 26 and March 4, 1982, she requested the Secretary to process her application without regard to her political beliefs. On March 11, 1982, having received no answer from the Secretary, Ms. Blitz filed suit. She requested a judgment declaring section 514 unconstitutional and a preliminary injunction ordering the Secretary to process her application without regard to her political beliefs. 538 F.Supp. at 1124.

The Secretary argued that Ms. Blitz's preliminary injunctive relief should be denied because it was unlikely she would prevail on the merits of her case. The Secretary contended the statute withstood constitutional scrutiny when narrowly read to prohibit only that advocacy which is directed to inciting imminent lawless action and is likely to achieve that result. Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction and in Support of Defendant's Motion to Dismiss (Defendant's Motion to Dismiss), Exhibit 5 at 14, *Blitz v. Donovan*, 538 F.Supp. 1119 (D.D.C.1982), *vacated*, 459 U.S. 1095, 103 S.Ct. 711, 74 L.Ed.2d 943 (1983). Alternatively, the Sec-

retary contended that Ms. Blitz's case was not properly before the district court because she had not yet exhausted her administrative remedies. *Id.* at 21–25.

The district court granted Ms. Blitz's requested relief after rejecting both the Secretary's narrow reading of section 514 and his use of the exhaustion doctrine. The court first noted that Ms. Blitz was not required to exhaust her administrative remedies because her petition raised constitutional questions on which the Secretary had no special expertise. 538 F.Supp. at 1124–25. The court then rejected the Secretary's narrow interpretation of section 514 because neither its text nor its legislative history appeared to distinguish between doctrinal advocacy and advocacy that incites violent action. *Id.* at 1127.[2]

On June 14, 1982, Ms. Blitz petitioned the district court for attorney's fees, expenses, and costs under the EAJA. The court granted the requested relief on the ground that the Secretary failed to show either that his litigation position was substantially justified or that any special circumstances made an award to Ms. Blitz unjust. *Blitz v. Donovan*, No. 82–0706 at 4, 9 (D.D.C. Aug. 29, 1983), Joint Appendix (J.A.) at 39, 42, 47. The Secretary appeals the district court's award of attorney's fees but does not contest its award of expenses and costs. Brief for Appellant at 12–13 n. 9.

The sole issue before this court is whether the Secretary has demonstrated that his interpretation of section 514 and his use of the exhaustion doctrine were substantially justified.[3] We conclude the Secretary's liti-

---

**2.** The government appealed the district court's judgment directly to the Supreme Court pursuant to 28 U.S.C. §§ 1252, 2101(a) (1982). On January 10, 1983, the Supreme Court vacated the district court's judgment on the ground of mootness. *Donovan v. Blitz,* 459 U.S. 1095, 103 S.Ct. 711, 74 L.Ed.2d 943 (1983). The court found the controversy moot because Ms. Blitz, while the appeal was pending, had been admitted to and completed her CETA program. *See* Joint Appendix (J.A.) at 34.

**3.** Ms. Blitz also contended in her attack on section 514 that the provision was an unconstitutional bill of attainder. In response, the Secretary argued that section 514 did not attaint Ms.

Blitz or any cognizable class of individuals. The district court, however, did not reach this issue in granting Ms. Blitz injunctive relief. *Blitz v. Donovan,* 538 F.Supp. 1119, 1127 n. 16 (D.D.C.1982), *vacated,* 459 U.S. 1095, 103 S.Ct. 711, 74 L.Ed.2d 943 (1983). Similarly, in deciding that the Secretary's litigation position was not substantially justified, the district court did not comment on the Secretary's position that section 514 was not a bill of attainder. *Blitz v. Donovan,* No. 82–0706 (D.D.C. Aug. 29, 1983), J.A. at 39. Because we must confine our review to those issues on appeal, we will examine the reasonableness only of the Secretary's reading of section 514 and his contention that Ms. Blitz was required to exhaust her remedies.

gation position was substantially justified in light of relevant case law, principles of statutory interpretation, and the text and legislative history of section 514.[4] Accordingly, we reverse the district court's award of attorney's fees.

## II. ANALYSIS

■■■ The EAJA provides, *inter alia*, that a prevailing private party shall receive attorney's fees in a suit brought by or against the government unless "the position of the United States was substantially justified or ... special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (1982). This court has construed the "position of the United States" to mean "the arguments relied upon by the government in litigation" and not the prelitigation government action that precipitated the suit. *Spencer v. NLRB*, 712 F.2d 539, 556–57 (D.C.Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984); *see Cinciarelli v. Reagan*, 729 F.2d 801, 804 (D.C.Cir.1984). The government has the burden of proving that its litigation position was "substantially justified," and the applicable standard is slightly more stringent than one of reasonableness. *Spencer*, 712 F.2d at 558. District court determinations regarding the reasonableness of the government's litigation position, insofar as that position consisted of interpretations of law, are subject to *de novo* review. *Id.* at 563.

### A. *The Secretary's Statutory Interpretation*

Section 514 as enacted states in full:

None of the funds appropriated or otherwise made available by this [Appropriations] Act may be used, pursuant to the Comprehensive Employment and Training Act, for the participation of individuals who publicly advocate the violent overthrow of the Federal Government or who have, within the past five years,

publicly advocated the violent overthrow of the Federal Government.

Pub.L. No. 97–92, § 101(a)(3), 95 Stat. 1183 (1981) (enacting by reference H.R. 4560, 97th Cong., 1st Sess. § 514 (1981)). The Secretary contended that the provision referred only to "*such advocacy [as] is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.*" Defendant's Motion to Dismiss at 14. The Secretary's interpretation removed from the scope of section 514 the kind of advocacy held by the Supreme Court to be constitutionally protected. In *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam), the Court determined that the free speech clause protects advocacy of a doctrine calling for violent governmental overthrow but does not protect advocacy intended and likely to incite imminent lawless action. *Id.* at 447–48, 89 S.Ct. at 1829–1830.

■■■ The Secretary's reading of section 514, insofar as it avoided penalizing constitutionally protected conduct, accorded with a cardinal principle of statutory interpretation. In *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932), the Supreme Court instructed that interpretations implicating the constitutional validity of congressional enactments should be avoided wherever possible. This court has similarly noted:

[W]hen one interpretation of a statute would create a substantial doubt as to the statute's constitutional validity, the courts will avoid that interpretation absent a "clear statement" of a contrary legislative intent. When a statute is fairly subject to a variety of interpretations all but one of which would make it unconstitutional, then the courts must presume Congress intended the interpretation which is constitutionally permissible.

*United States v. Thompson*, 452 F.2d 1333, 1337 (D.C.Cir.1971), *cert. denied*, 405 U.S.

---

**4.** We emphasize that our discussion is limited to whether the Secretary's litigation position was substantially justified. We do not decide whether his position was correct. We accordingly

express no opinion on the constitutionality of section 514 or whether Ms. Blitz should have exhausted her administrative remedies.

998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972). *See New York v. Ferber*, 458 U.S. 747, 769 n. 24, 102 S.Ct. 3348, 3361 n. 24, 73 L.Ed.2d 1113 (1982); *United States v. Clark*, 445 U.S. 23, 27, 100 S.Ct. 895, 899, 63 L.Ed.2d 171 (1980); 2A *Sutherland Statutory Construction* § 45.11 (C. Sands 4th ed. 1973). This settled principle of statutory interpretation thus provided sound authority for the Secretary's argument that section 514 applied only to inciteful advocacy.[5]

The Secretary's interpretation was also supported by the special meaning given the term "advocacy" in the first amendment context. In *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), the Supreme Court construed section 2 of the Smith Act, which provided in pertinent part: "It shall be unlawful for any person ... to knowingly ... advocate ... overthrowing ... any government in the United States by force or violence ...." 354 U.S. at 301 n. 1, 77 S.Ct. at 1067–68 n. 1. The Court did not "assume that Congress chose to disregard a constitutional danger zone so clearly marked, or that it used the words 'advocate' and 'teach' in their ordinary dictionary meanings when they had already been construed as terms of art carrying a special and limited connotation." *Id.* at 319, 77 S.Ct. at 1077. Rather, the Court concluded in

*Yates* that section 2 of the Smith Act prohibited only such advocacy that is reasonably calculated to incite persons to action. *Id.* at 325–26, 77 S.Ct. at 1080–81. *See also Scales v. United States*, 367 U.S. 203, 221, 228–29, 81 S.Ct. 1469, 1485–1486, 6 L.Ed.2d 782 (1961); *Dennis v. United States*, 341 U.S. 494, 501–02, 71 S.Ct. 857, 863, 95 L.Ed. 1137 (1951).

■ In construing statutes, the Supreme Court has found it "always appropriate to assume that our elected representatives ... know the law ...." *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–1958, 60 L.Ed.2d 560 (1979). Furthermore, "Congress is deemed to know the ... judicial gloss given to certain language and thus adopts the existing interpretation unless it affirmatively acts to change the meaning." *Florida National Guard v. FLRA*, 699 F.2d 1082, 1087 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983). The Secretary could therefore presume that Congress was well aware that the pivotal word in section 514 had been construed in similar contexts as a term of art. Accordingly, the Secretary had firm support for not attributing to the text of section 514 its strictly literal meaning.[6]

---

5. We are well aware of the limits on a court's discretion to construe statutes to avoid constitutional concerns. The Supreme Court has admonished: "Although this Court will often strain to construe legislation so as to save it against constitutional attack, it must not ... carry this to the point of perverting the purpose of a statute." *Scales v. United States*, 367 U.S. 203, 211, 81 S.Ct. 1469, 1477, 6 L.Ed.2d 782 (1961).

There thus exists a tension between the principle prohibiting judicial legislation and the principle counseling against statutory constructions that implicate constitutional concerns. Whether a court may read a statute narrowly to comport with constitutional norms depends on the clarity of the provision's text and legislative history. *See Swain v. Pressley*, 430 U.S. 372, 378–79 n. 11, 97 S.Ct. 1224, 1228–29 n. 11, 51 L.Ed.2d 411 (1977); *Aptheker v. Secretary of State*, 378 U.S. 500, 515, 84 S.Ct. 1659, 1668, 12 L.Ed.2d 992 (1964). We must accordingly examine section 514's text and legislative history to determine the reasonableness of the Secretary's proposed interpretation.

6. Appellee attempts to distinguish *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), by noting that the Supreme Court's reading of "advocate" and "teach" as terms of art was well supported by the legislative history of the Smith Act. *Id.* at 319, 77 S.Ct. at 1077. Appellee argues that the legislative history of section 514 provides no such support for construing "advocacy" as a term of art.

We reject appellee's contention that *Yates* does not support the Secretary's position for two reasons. First, *Yates* did not define the amount or kind of supportive legislative history necessary to justify a court's reading a statutory word as a term of art. Indeed, the Court in *Yates* cited from the legislative history only remarks by a leading proponent of the Smith Act at a subcommittee hearing; it made no reference to committee reports or the final text of the enacted bill. 354 U.S. at 319 n. 26, 77 S.Ct. at 1077 n. 26. Furthermore, less supportive legislative history than that which authorizes a court to read a statutory word as a term of art should be necessary to demonstrate that a litigant's proposed reading of such a word is substantially

The Secretary's narrow interpretation also avoided penalizing conduct expressly protected by preexisting CETA provisions. *See Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974); 2A *Sutherland Statutory Construction* § 46.05 (C. Sands 4th ed. 1973). In 29 U.S.C. §§ 823(a)(1), 834(a) (Supp. V 1981), Congress prohibited excluding any person from CETA programs on the basis of political affiliation or belief. To interpret section 514 as proscribing doctrinal advocacy would have run directly counter to sections 823(a)(1) and 834(a). By construing section 514 as proscribing only inciteful advocacy, the Secretary steered a middle course that invalidated neither provision but implemented both to the fullest extent possible. *Citizens to Save Spencer County v. EPA,* 600 F.2d 844, 870–71 & nn. 118 & 122 (D.C.Cir.1979). *See* R. Dickerson, *The Interpretation and Application of Statutes* 224 (1975).

The Secretary's reading of section 514 thus avoided constitutional concerns, attributed to a term of art its legal significance, and construed consistently several provisions within the same statute. In this regard, his reading comported with sound principles of statutory construction. These principles control a statute's interpretation unless the statute's text or legislative his-

tory mandates a contrary construction. *See supra* note 5. Having already examined the text of section 514, we now turn to its legislative history.

The 97th Congress passed section 514 without debate on either floor and without comment in any committee reports. The entire legislative history of section 514 consists solely of statements made on the floor of the 96th Congress regarding earlier versions never adopted.[7] These remarks do not present a clear statement defining the kind of advocacy the 96th Congress intended to penalize. Significantly, however, the sole inquiry regarding the meaning of "advocate" provoked a reference to relevant case law. Senator Warner, who proposed the amendment on the Senate floor, noted specifically that a "series of court decisions ... pretty well characterize [sic] those remarks which would be considered advocating the violent overthrow of the U.S. Government." 126 Cong.Rec. 34,279 (1980). The legislative history, at least to this extent, supports the Secretary's attributing "advocacy" the judicial gloss it has acquired in the first amendment context.

Ms. Blitz, however, argues that several statements in the legislative record manifest a definitive congressional intent to penalize constitutionally protected doctrinal

---

justified. *Yates,* therefore, does not impose a heavy burden on the Secretary to present highly probative and supportive legislative history to buttress his proposed construction of "advocacy" as a term of art.

Second, we reject appellee's empirical assertion that *no* legislative history supports the Secretary's reading of "advocacy" as a term of art. *See infra* pp. 1246–1247.

7. Section 514 has an unusually fragmented legislative history. The provision was originally introduced in the 96th Congress as a bill to amend CETA by Representative Dan Daniel of Virginia on November 13, 1980. H.R. 8339, 96th Cong., 2d Sess., 126 Cong.Rec. 29,522 (1980). While H.R. 8339 lay dormant, Senator Hollings introduced a virtually identical provision on December 11, 1980 on the Senate floor as an amendment to an appropriations bill. UP. Amendment 1891, H.R.J.Res. 637, 96th Cong., 2d Sess., 126 Cong.Rec. 33,543 (1980). Although that appropriations bill was never enacted, Senator Warner introduced an identical provision

on the Senate floor as an amendment to another appropriations bill. UP. Amendment 1967, H.R.J.Res. 644, 96th Cong., 2d Sess., 126 Cong. Rec. 34,279 (1980). To expedite the enactment of this second appropriations bill, however, Senator Warner withdrew the proposed amendment. 126 Cong.Rec. 34,281.

On October 6, 1981, in the first session of the 97th Congress, Representative Daniel introduced on the House floor a similar amendment to yet another appropriations bill. H.R. 4560, 97th Cong., 1st Sess. § 514, 127 Cong.Rec. H7089 (daily ed., Oct. 6, 1981). The amendment was agreed to without debate. *Id.* The Senate Committee on Appropriations reported without comment the same provision on November 9, 1981. S.Rep. No. 97–268, 97th Cong., 1st Sess. (1981); 127 Cong.Rec. S13,145 (daily ed., Nov. 9, 1981). H.R. 4560, including section 514, was eventually enacted by reference under § 101(a)(3) of Pub.L. No. 97–92. 95 Stat. 1183 (Dec. 15, 1981). *See Blitz v. Donovan,* 538 F.Supp. 1119, 1122–23 n. 5 (D.D.C.1982), *vacated,* 459 U.S. 1095, 103 S.Ct. 711, 74 L.Ed.2d 943 (1983).

advocacy. These statements include disapproving references by Representative Daniel and Senator Warner to Ms. Blitz's position that "there must be a revolution in the U.S. ... by force of arms if necessary," 126 Cong.Rec. 33,695, 34,280 (1980), and to the general policy of governmental overthrow.[8] We reject appellee's argument for two reasons.

■ First, we do not attribute significant probative force to comments made during a Congress that never adopted the relevant provision. We cannot impute to the 97th Congress' silence full endorsement of the views expressed on the floor of the 96th Congress even though the amendments introduced in the 96th Congress were virtually identical to section 514. *See Zuber v. Allen*, 396 U.S. 168, 185, 90 S.Ct. 314, 323, 24 L.Ed.2d 345 (1969); *Chisholm v. FCC*, 538 F.2d 349, 361 (D.C.Cir.), *cert. denied*, 429 U.S. 890, 97 S.Ct. 247, 50 L.Ed.2d 173 (1976); R. Dickerson, *The Interpretation and Application of Statutes* 181–82 (1975). Also, legislators' remarks during a floor debate, even in the Congress that enacted the legislation, do not control statutory interpretation and generally are not accorded significant weight. *Weinberger v. Rossi*, 456 U.S. 25, 35 n. 15, 102 S.Ct. 1510, 1517 n. 15, 71 L.Ed.2d 715 (1982); *In re Surface Mining Regulation Litigation*, 627 F.2d 1346, 1362 (D.C.Cir.1980); 2A *Sutherland Statutory Construction* § 48.13 (C. Sands 4th ed. 1973).

Second, we find other statements in the legislative record that indicate concern for the constitutional implications of section 514. *See, e.g.,* 126 Cong.Rec. 34,279–80 (1980).[9] Such concern suggests that Congress' corporate intent was not to penalize advocacy clearly protected by the Constitution. Given the mixed import and the diminished probative force of the legislative history of section 514, we do not discern a clear legislative effort to proscribe doctrinal advocacy.

■ In sum, the Secretary's reading of section 514 complied with sound canons of statutory interpretation, had some support in the legislative history, and contradicted no definitive congressional purpose. We therefore hold that the Secretary was substantially justified in arguing that section 514 applied only to inciteful advocacy.[10]

### B. Exhaustion of Administrative Remedies

■ The Secretary's second argument challenged the district court's jurisdiction on the ground that appellee had failed to exhaust an exclusive administrative review procedure. Defendant's Motion to Dismiss at 21–25. The Secretary contended that a comprehensive grievance system providing ultimate access to the court of appeals constituted the exclusive means by which relief could be obtained against a prime sponsor for noncompliance with CETA.[11] *Id.* at 21–22. *See* 29 U.S.C. §§ 816–817 (Supp. V

8. For example, Representative Daniel stated on the House floor: "I do not believe it was the intention of Congress that individuals whose stated policy is the overthrow of our system be the beneficiary [sic] of that system." 126 CONG. REC. 33,695 (1980).

9. Additional ambiguity in the legislative record emanates from Representative Daniel's reference to Ms. Blitz's apparent indictment on felony riot charges in connection with her participation in certain demonstrations. 126 CONG.REC. 29,522 (1980). The Secretary contends this reference indicates that Representative Daniel wished to penalize only inciteful advocacy. Although we do not attribute such a definitive meaning to Representative Daniel's reference, we do believe it further obfuscates the kind of advocacy Representative Daniel individually or

the 96th Congress as a whole intended to penalize.

10. The Secretary argues alternatively that the government's defense of a statute's constitutionality is exempt from EAJA fee awards. The Secretary further asserts that even if such a defense is subject to EAJA fee awards, the Executive's obligation to defend the constitutionality of legislative enactments will in most cases constitute a "special circumstance" that makes an award unjust. Because we find the Secretary's litigation position substantially justified, we do not reach these arguments.

11. A "prime sponsor" was generally a unit of state or local government that administered CETA programs at the local level. *See* 29 U.S.C. § 811 (Supp. V 1981).

1981); 20 C.F.R. §§ 676.81–676.93 (1982). He then noted that appellee's complaint effectively charged prime sponsor VEC with noncompliance with CETA nondiscrimination provisions and requested the Secretary to direct VEC to process appellee's application without regard to her political beliefs. Complaint, paras. 1, 21, 28, 29, 30, Exhibit 1, *Blitz v. Donovan*, 538 F.Supp. 1119 (D.D.C.1982), *vacated*, 459 U.S. 1095, 103 S.Ct. 711, 74 L.Ed.2d 943 (1983). The Secretary accordingly asserted that appellee was required to proceed under the administrative remedial scheme and that the district court was without jurisdiction to rule on appellee's petition. Defendant's Motion to Dismiss at 21–22.

The Secretary's jurisdictional argument has substantial precedential support. The Supreme Court has recognized that "no one is entitled to judicial relief for a supposed ... injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938)). The Court has also ruled that where Congress has enacted a specific statutory scheme for obtaining review, "the doctrine of exhaustion of administrative remedies ... requires that the statutory mode of review be adhered to notwithstanding the absence of an express statutory command of exclusiveness." *Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965). Additionally, the Second Circuit has held that the review procedure available under CETA was "exclusive as to claims grounded upon a prime sponsor's ... illegal actions." *CETA Workers' Organizing Committee v. City of New York*, 617 F.2d 926, 936 (2d Cir. 1980). In light of the applicable precedent, we conclude that the Secretary was substantially justified in contending Ms. Blitz was obligated to exhaust her administrative remedies before seeking judicial relief.

Appellee argues, however, that the exhaustion doctrine does not apply to cases presenting constitutional challenges to a regulatory or statutory provision. The district court found Ms. Blitz's constitutional challenges sufficient both to exempt her from pursuing administrative remedies and to conclude the Secretary's reliance on the exhaustion doctrine lacked substantial justification. *Blitz v. Donovan*, 538 F.Supp. 1119, 1124–25 (D.D.C.1982), *vacated*, 459 U.S. 1095, 103 S.Ct. 711, 74 L.Ed.2d 943 (1983); *Blitz v. Donovan*, No. 82–0706 at 4 (Aug. 29, 1983), J.A. at 39, 42. The Secretary, however, did not contend that the presence of constitutional challenges is irrelevant to the application of the exhaustion doctrine. Rather, he argued that constitutional challenges do not exempt a litigant from exhausting available administrative remedies when pursuit of those remedies may avert the need for constitutional adjudication. The Secretary noted that Ms. Blitz's pursuit of administrative remedies would have allowed him to construe section 514 to penalize only inciteful advocacy. Defendant's Motion to Dismiss at 23–25. Had appellee obtained admission into the CETA program, constitutional adjudication would have become unnecessary. *Id.*

Again, we find substantial support for the Secretary's position. The Supreme Court has ruled that where a dispute is subject to a nonconstitutional disposition, "the very fact that constitutional issues are put forward constitutes a strong reason for not allowing" the avoidance of administrative remedies. *Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 772, 67 S.Ct. 1493, 1503, 91 L.Ed. 1796 (1947). The Court reasoned that the agency "might render consideration of the constitutional question[ ] ... unnecessary ...." *Id.* at 773, 67 S.Ct. at 1503. *See American Federation of Government Employees v. Nimmo*, 711 F.2d 28, 31 (4th Cir.1983); *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 295–96 (3d Cir.1982).[12] The dis-

12. In further support of the exhaustion argu-    ment, the Secretary contended that pursuit of

trict court's decision to immediately adjudicate appellee's constitutional challenges does not mean the Secretary's exhaustion argument lacked a strong basis. Indeed, given the relevant authority and the possibility that administrative relief could have made constitutional adjudication unnecessary, we conclude that the Secretary's use of the exhaustion doctrine was substantially justified.

### III. Conclusion

For the foregoing reasons, we find that the Secretary was substantially justified in narrowly interpreting section 514 and in arguing that Ms. Blitz was required to exhaust her administrative remedies. Accordingly, we reverse the district court's award of attorney's fees under section 2412(d) of the EAJA.

*It is so ordered.*

HARRY T. EDWARDS, Circuit Judge, concurring in part and dissenting in part:

Although I find the competing considerations in this case to be extremely close, on balance I am convinced that the judgment expressed in the majority opinion is correct. Accordingly, I concur in parts I and II–A of the majority opinion, and in the decision to reverse the award of attorney's fees. However, I am unpersuaded by the rationale underlying part II–B and, therefore, I am unable to subscribe to this portion of the majority opinion.

administrative remedies would have provided the requisite factual context for judicial review of this case. The Secretary asserts that even under the narrow construction of the disputed provision, it is unclear whether appellee would have qualified for admission to the CETA program. The Secretary noted that appellee was apparently indicted on felony riot charges in connection with her alleged participation in demonstrations in November 1979. Defendant's Motion to Dismiss at 24 & n. *; 126 Cong.Rec. 29,522 (1980).

There is adequate authority supporting the view that exhaustion of administrative remedies, even when constitutional issues are raised, is necessary to develop a concrete factual context for judicial review. *W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 312–13, 88 S.Ct. 450, 452–53, 19 L.Ed.2d 546 (1967); *Republic Industries, Inc. v. Central Pa. Teamsters Pension Fund*, 693 F.2d 290, 293, 295–96 (3d Cir.1982). *See Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 293–95, 101 S.Ct. 2352, 2369–70, 69 L.Ed.2d 1 (1981). This point accordingly supports the Secretary's exhaustion argument and weighs in favor of our holding that argument to be substantially justified.