**GLAXO, INC., Plaintiff,**

v.

**Otis R. BOWEN, M.D., in his Capacity as Secretary of Health and Human Services; and Frank E, Young, M.D., in his Capacity as Commissioner of Food and**

Drugs, Food and Drug Administration, Department of Health & Human Services, Defendants [1],

Eli Lilly and Company, Intervenor-Defendant.

No. 85–1503–CIV–5.

United States District Court, E.D. North Carolina, Raleigh Division.

July 23, 1986.

Peter W. Safir, Kleinfeld, Kaplan & Becker, Washington, D.C., Randel E. Phillips, Moore, Van Allen, Allen & Thigpen, Charlotte, N.C., William D. Dannelly, Moore, Van Allen, Allen & Thigpen, Raleigh, N.C., for plaintiff.

James G. Carpenter, Asst. U.S. Atty., Raleigh, N.C., Jacqueline H. Eagle, U.S. Dept. of Justice, Washington, D.C., Sandra I. Barnes, Trial Atty., Food & Drug Admin., Rockville, Md., for defendants Bowen and Young.

Joel E. Hoffman and Willard K. Tom, Sutherland, Asbill & Brennan, Washington, D.C., Robert W. Spearman, Sanford, Adams, McCullough & Beard, Raleigh, N.C., for intervenor-defendant Eli Lilly and Co.

ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter comes before the court on cross-motions for summary judgment submitted by plaintiff Glaxo, Inc. (Glaxo), defendants Secretary Otis R. Bowen and Commissioner Frank Young and defendant-intervenor Eli Lilly & Company (Lilly) pursuant to Rule 56 of the Federal Rules of Civil Procedure. The court recited the facts underlying this dispute in its order of November 27, 1985 which denied Glaxo's motion for a preliminary injunction. *See Glaxo v. Heckler,* 623 F.Supp. 69 (E.D.N.C. 1985). Those facts need not be restated in their entirety here.

I.

Glaxo seeks to bar the Food and Drug Administration (FDA) from approving tazidime, an antibiotic drug product manufactured by Lilly. Tazidime is a generic version of Glaxo's pioneer antibiotic drug ceftazidime. Glaxo claims that a 1984 amendment to the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.,* (the FDCA), prevents any manufacturer of pre-

---

1. The court *sua sponte* has substituted Otis R. Bowen, M.D., as a party in this suit in place of Margaret Heckler pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

scription pharmaceutical drugs from marketing a generic version of ceftazidime for five years from the date of the pioneer drug's approval. Under this theory, no manufacturer could market a generic version of ceftazidime prior to July 19, 1990.[2] Glaxo previously sought to enjoin the FDA from approving Lilly's tazidime generic antibiotic drug. Following a hearing on November 19, 1985, the court denied Glaxo's motion for a preliminary injunction. The FDA approved Lilly's tazidime application on November 20, 1985.

## II.

This court previously recited the history of FDA approval of both antibiotic and nonantibiotic drugs. *See Glaxo*, 623 F.Supp. at 71–73. It is sufficient to note here that the 1984 amendment to 21 U.S.C. § 355 creates a similarity in the method of approval of antibiotic and nonantibiotic drugs. Generic copies of antibiotic drugs, regulated under 21 U.S.C. § 357, and generic versions of nonantibiotic drugs, regulated under 21 U.S.C. § 355, were subject to different approval processes prior to the 1984 amendment. This amendment allowed manufacturers of generic nonantibiotic drugs to file Abbreviated New Drug Applications (NDA's) which obviated the need for successive filings of safety and efficacy data with each application for a generic nonantibiotic drug. *See* 21 U.S.C. § 355(j) (Supp. II 1984). Since this amend-

ment drastically altered the established nonantibiotic drug approval process, Congress enacted exclusionary provisions designed to provide manufacturers of pioneer nonantibiotic drug products with some marketing protections. *See* 21 U.S.C. § 355(j)(4)(D)(i) to (v) (Supp. II 1984).

The exclusivity provision relevant to this case, i.e., § 355(j)(4)(D)(ii), establishes a five year exclusive marketing period for pioneer drugs submitted and approved pursuant to § 355(b).[3] At first glance, the statute seemingly applies only to nonantibiotic drugs, as these are the only drugs traditionally approved under § 355.

Glaxo contends that § 355(j)(4)(D)(ii) applies to ceftazidime, thereby providing the manufacturer with a five year exclusive marketing period, even though that drug is an antibiotic which was submitted under § 357. Glaxo cites to the transfer provision of § 357(e), which allows for an initial request for certification of an antibiotic drug to be treated as part of a § 355 application as of the date the antibiotic is exempted from batch certification.[4] Glaxo claims that § 357(e) requires any antibiotic drug exempted from batch certification to be treated as a § 355(b) application retroactive to the date of initial filing, as opposed to the date of exemption.

Glaxo's argument is dependent upon a formalistic construction of the statutory approval process set out in the FDCA. Glaxo correctly notes that § 357 does not

**2.** The FDA approved Glaxo's ceftazidime application on July 19, 1985.

**3.** The exclusivity provision provides in pertinent part:

"If an application submitted under subsection (b) of this section for a drug, no active ingredient of which has been approved in any other application under section (b) of this section, is approved after September 24, 1984, no application may be submitted under this subsection which refers to the drug for which the subsection (b) application was submitted before the expiration of five years from the date of approval of the application under subsection (b) of this section...."

21 U.S.C. § 355(j)(4)(D)(ii) (Supp. II 1984).

**4.** The pertinent statutory provisions of § 357 provide in pertinent part:

"(c) Whenever in the judgment of the Secretary, the requirements of this section ... with respect to any drug or class of drugs are not necessary to insure safety and efficacy of use, the Secretary shall promulgate regulations exempting such drug or class of drugs from such requirements....

(e) No drug which is subject to this section shall be deemed to be subject to any provision of section 355 of this title except a new drug exempted from the requirements of this section ... pursuant to regulations promulgated by the Secretary: *Provided*, that, for purposes of section 355 of this title, the initial request for certification ... of a new drug so exempted shall be considered a part of the application filed pursuant to section 355(b) of this title with respect to ... such drug as of the date of the exemption...."

21 U.S.C. § 357(c), (e) (1982).

use the term "approval" in conjunction with FDA regulation of antibiotics. Glaxo theorizes that this omission is not the product of legislative oversight; rather, Glaxo contends Congress intended for all antibiotics to be "approved" pursuant to § 355 (which does expressly provide for "approval" of drug applications) following their exemption from batch certification.[5]

The FDA and Lilly reject Glaxo's interpretation of § 357 and instead contend that the 1984 amendment does not affect antibiotic drugs. They posit that antibiotic drugs like ceftazidime are both submitted and approved pursuant to § 357. Only following approval is an antibiotic drug then exempted and treated as a nonantibiotic by virtue of § 357(e)'s transfer provision. The defendants point to the unambiguous wording of the FDA batch certification regulation, i.e., 21 C.F.R. § 433.1, to support their statutory construction of § 357(e).

### III.

■ As in any case involving statutory construction, the court must first look to the contested statute itself. The court's first inquiry must be whether Congress has directly spoken to the precise question at issue. *Young v. Community Nutrition Institute,* —— U.S. ——, 106 S.Ct. 2360, 90 L.Ed.2d 959 (1986), quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). If congressional intent is clear, the court must give effect to the unambiguously expressed intent of Congress. *Id.* The court is required to give deference to an agency's interpretation of its enforcing statute only where the statutory language itself is sufficiently ambiguous to convince the court that Congress has not addressed the precise question at issue. *Id.* Thus, courts look to an agency's interpretation of its

enforcing statute only if both the statute and its legislative history fail to provide a sufficient basis upon which to interpret the controverted legislation. While the contested statutory provision is not without some ambiguity, the court finds it sufficiently clear to permit judicial construction without resort to legislative history or FDA interpretation.[6]

■ The court concludes that Glaxo is not entitled to receive a five year exclusive marketing period for ceftazidime because the drug does not fall within the scope of § 355's exclusivity provisions. Ceftazidime's application was not submitted under § 355(b), and therefore simply cannot qualify for an exclusive marketing period pursuant to § 355(j)(4)(D)(ii). While this holding in itself constitutes sufficient grounds to grant defendants' motions for summary judgment, the court further rules that ceftazidime was approved pursuant to § 357 and only thereafter was exempted and subsequently regulated under § 355.

### A. *Submission of Ceftazidime's Application*

A threshold consideration in this case concerns Glaxo's submission of its ceftazidime application under § 357. Glaxo argues that § 357(e) serves to transform an antibiotic drug application submitted under § 357 into a § 355 application retroactive to the date of initial filing once that drug is exempted from batch certification. This interpretation flies in the face of § 357(e)'s language. That statute provides that any initial request for certification be treated as a part of an application filed pursuant to § 355 *as of the date of exemption* from batch certification.[7] This language not only fails to mention retroactive treatment of an antibiotic drug application, but instead affirmatively states that the application is to be treated as a § 355 NDA only

---

5. All parties agree that the FDA provided for blanket exemption from batch certification in 1982 with their issuance of 21 C.F.R. § 433.1. Consequently, under Glaxo's argument, virtually all antibiotic drugs are approved under § 355.

6. The question of resorting to legislative history is in any event an academic one in this case, as all parties agree that § 355's exclusivity provisions, as enacted, were last-minute provisions for which no legislative history exists.

7. *See* infra. n. 5.

as of the date the FDA exempts the drug from batch certification.

Glaxo fails to resolve the inconsistency between the language of § 357(e) and its own interpretation of that statute. Instead, Glaxo chooses to concentrate on the approval processes under § 355 and § 357. Yet this inconsistency overshadows any discussion of the FDA's approval process and defeats Glaxo's claim. Glaxo fails to cite statutory language or case law suggesting that an antibiotic drug can be submitted under both § 355 and § 357. Given the clear language of § 357(e) and the lack of support for a "retroactive" interpretation of that statutory provision, the court concludes that ceftazidime's application was submitted under § 357 and was never legally deemed submitted under § 355(b). This ground alone prevents Glaxo from acquiring an exclusive marketing period for ceftazidime under § 355(j).

B. *Approval of Ceftazidime's Application*

The court's interpretation of § 355(j)(4)(D)(ii)'s "submission" language is bolstered by the FDA's batch certification exemption regulation. This regulation is the sole basis upon which antibiotic drugs are exempted from batch certification. *See* § 357(c), (e) (1982). Congress expressly gave the FDA authority to exempt antibiotics through regulation. *Id.* Given this congressional mandate the FDA's interpretation of that mandate, as enunciated in its regulation creating a batch certification exemption process, is entitled to deference. The court may properly resort to § 433.1 for guidance in interpreting· § 357(e), as that regulation constitutes an administrative interpretation of the FDCA by its enforcing agency. *See Meritor Savings Bank, FSB v. Vinson,* — U.S. ——, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

The FDA, through § 433.1, has interpreted § 357(e) as allowing for regulation of an antibiotic drug under § 355 following the drug's approval and exemption under § 357.[8] The regulation does not allow § 357 applications to be treated retroactively as § 355 submissions, and indeed this regulation's interpretation of § 357 precludes the possibility of either submission or approval of an antibiotic drug application under § 355(b).

This court, in its order denying Glaxo's motion for a preliminary injunction, ruled that § 433.1's interpretation of § 357(e) was a correct one. Glaxo contends that the court erred in so ruling. Since § 357 does not provide for an approval process for antibiotic drugs, so the argument goes, § 433.1 erroneously interprets § 357(e) by providing for regulation of an exempted antibiotic following approval under the latter statute. Glaxo's argument is meritless, and the court reaffirms its earlier ruling upholding the FDA's interpretation of § 357(e).

Several considerations combine to refute Glaxo's contentions. First, the FDA regulation is consistent with § 357(e)'s language which treats an initial certification request as a § 355 application only as of the date of exemption from batch certification. Neither the language of § 433.1 nor that of § 357(e) contemplates an approval process in which antibiotic drug applications submitted pursuant to § 357 are retroactively treated as § 355 submissions.

Second, Glaxo's entire argument rests upon a unique interpretation of § 357(e)'s transfer provision. Yet this provision does not come into play without a regulation providing for exemption from batch certification. Antibiotics are exempt from certification only by virtue of 21 C.F.R. § 433.1. Thus, it is the existence of § 433.1 which allows Glaxo to argue that ceftazidime should be treated as a § 355 nonantibiotic drug pursuant to § 357(e). Glaxo then turns to attack that regulation as being inconsistent with § 357(e)'s language in order to succeed on the merits in this case. That position is untenable.

---

**8.** Glaxo's interpretation of § 357(e), by contrast, provides for transfer of an antibiotic drug application to § 355 after its exemption from batch certification and prior to its approval under the latter statute.

Third, while § 357(e) is silent as to whether an antibiotic drug application is approved before or after a certification request is treated as an NDA under § 355, that statute does give the FDA exclusive dominion over creating exemption standards. One of the FDA's conditions for exemption requires that an antibiotic drug "be approved for marketing." 21 C.F.R. § 433(b)(1). Thus, the FDA has made marketing approval a precondition for certification. This approval process, while not explicitly delineated as such in § 357(a), (b), has long been the traditional approval process for antibiotic drug applications. Such an informal "approval for marketing" criterion also is consistent with the language found in § 357(a) and (b). Moreover, Glaxo readily admits that any antibiotic not exempted from batch certification would fail to come within the confines of § 355. Glaxo's argument, drawn to its logical conclusion, holds that these drugs could never be "approved," since approval according to Glaxo occurs only via § 355.

Fourth, Glaxo's argument creates an unpredictable exclusivity scheme. Antibiotic drug manufacturers in this scheme are provided exclusive marketing periods so long as their antibiotic products are exempted from batch certification. However, if the FDA exercises its authority to revoke an antibiotic drug's exemption (an authority all parties agree the FDA possesses), exclusive marketing rights vanish. Under Glaxo's scenario, pharmaceutical manufacturers must spend enormous sums of dollars on antibiotic research without ever being certain they will be given, much less retain, exclusive marketing rights. Glaxo fails to cite either to express statutory language or to congressional intent to support its proposed marketing scheme.

Finally, the history of FDA approval for antibiotic drug applications holds against Glaxo's interpretation of the 1984 amendment. Prior to 1984, manufacturers of pioneer antibiotic drugs did not enjoy the advantages their counterparts in the nonantibiotic manufacturing industry did; the use of monographs made production of generic versions of pioneer antibiotics the standard practice. The language in the 1984 amendment and the sparse legislative history accompanying the exclusionary provisions suggests that the amendment was enacted to expand the number of generic versions of nonantibiotic pioneer drugs. There is no indication that the amendment was designed to restrict the range of generic antibiotic drugs available for public consumption.

## IV.

This court refuses to interpret the amendment in a manner contrary to the traditional drug approval process and in conflict with the FDA's interpretation of its enabling statute absent an express indication from Congress that such an interpretation is appropriate. For the foregoing reasons, the defendants' motions for summary judgment are GRANTED. For these same reasons, plaintiff's motion for summary judgment is DENIED.