26 F.3d 138
 33 U.S.P.Q.2d 1539
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
BRISTOL-MYERS SQUIBB COMPANY and Mead Johnson & Company,
Plaintiffs-Appellants,
v.
DANBURY PHARMACAL, INC., Defendant-Appellee.
 No. 93-1537.
 United States Court of Appeals, Federal Circuit.
 April 13, 1994.
 
 Before MICHEL, PLAGER and RADER, Circuit Judges.
 DECISION
 MICHEL, Circuit Judge.
 
 
 1
 Bristol-Myers Squibb Company and Mead Johnson & Company (collectively Bristol-Myers) appeal from the July 8, 1993 decision of the United States District Court for the Southern District of New York, granting summary judgment for Danbury Pharmacal, Inc. (Danbury) and holding U.S. Patent No. 4,182,763 (the '763 patent) invalid due to anticipation under 35 U.S.C. Sec. 102. Bristol-Myers Squibb Co. v. Danbury Pharmacal, Inc., 825 F.Supp. 58, 28 USPQ2d 1947 (S.D.N.Y.1993). Because affidavits submitted by Bristol-Myers raise a genuine issue of material fact, we vacate and remand.
 
 DISCUSSION
 
 2
 Bristol-Myers sued Danbury for infringement of the '763 patent claiming a method of using the drug buspirone to treat neurotic anxiety.[1] Danbury moved for summary judgment on the basis that the '763 patent was invalid due to anticipation by U.S. Patent Nos. 3,717,643 ('643 patent) and 3,976,776 ('776 patent),[2] also owned by Bristol-Myers which describe buspirone as a "tranquilizing agent." Bristol-Myers argued before the district court that one skilled in the art would have understood the '776 patent to disclose use of buspirone as an anti-psychotic agent rather than as anti-neurotic anxiety (anxiolytic) agent as claimed in the later-issued '763 patent. The district court, however, concluded that the '776 patent did disclose use of buspirone for treating neurotic anxiety and, therefore, anticipated the claims of the '763 patent as a matter of law.
 
 
 3
 Invalidity for anticipation requires that all of the elements of the claimed invention be described in a single prior art reference. Scripps Clinic & Research Fdn. v. Genetech, Inc., 927 F.2d 1565, 1576, 18 USPQ2d 1001, 1010 (Fed.Cir.1991). There must be no difference between the claimed invention and the anticipating reference as viewed by a person of ordinary skill in the art. Id., 18 USPQ2d at 1010.
 
 
 4
 A grant of summary judgment is proper only if no material facts are genuinely disputed, or there is no reasonable basis on which the party resisting summary judgment can prevail, even if we assume all disputed facts and inferences in favor of the non-moving party. Id., 18 USPQ2d at 1010. However, the party opposing summary judgment must point to an evidentiary conflict created on the record; conclusory statements are insufficient. SRI Int'l v. Matsushita Elec. Co., 775 F.2d 1107, 1116, 227 USPQ 577, 581 (Fed.Cir.1985) (in banc). In reviewing the district court's grant of summary judgment, we decide independently whether no material facts are in genuine dispute. C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc., 911 F.2d 670, 673, 15 USPQ2d 1540, 1542-43 (Fed.Cir.1988).
 
 
 5
 The '776 patent calls the family of compounds including buspirone "highly active and specific tranquilizing agents" which "exhibit anti-emetic properties" and have substantially diminished sedative and alpha-adrenergic blockade effects compared to other known tranquilizing agents such as chlorpromazine. In addition, the '776 patent describes tests of buspirone on rats and Rhesus monkeys:
 
 
 6
 Tranquilizing properties of the compounds of this invention can be demonstrated by rats in a shuttle box technique described by J.R. Albert and L.I. Allen in the Pharmacologist 4, 152 (1962). This test is designed to differentiate tranquilizing agents from non-specific nervous system depressants such as sedatives and hypnotics.... The tranquilizing action of the compounds of the present invention can be demonstrated in Rhesus monkeys by observing general behavioral effects. Intramuscular administration affords tranquilizing effects similar to those produced by chlorpromazine.
 
 
 7
 See Bristol-Myers Squibb Co., 825 F.Supp. at 60, 28 USPQ2d at 1949.
 
 
 8
 The district court reasoned that one skilled in the art would have interpreted the statement in the '776 patent that buspirone had "tranquilizing effects similar to those produced by chlorpromazine" to mean that buspirone had anxiolytic as well as anti-psychotic effects. Evidence was submitted that in 1969, when the '776 patent was filed, chlorpromazine was regarded by many skilled in the art as effective in treating anxiety. According to the district court, nothing in the '776 patent implied that buspirone differed from chlorpromazine through lack of anxiolytic activity. Id. at 61-62, 28 USPQ2d at 1950-51.
 
 
 9
 The district court further relied on documents filed by Bristol-Myers with the Food and Drug Administration (FDA) in February 1972, to show how one skilled in the art would have understood the "tranquilizing effects" of buspirone in relation to that of chlorpromazine. An Investigator Brochure stated, "it appears that [buspirone] has potential clinical activity in the same areas as [chlorpromazine] with particular emphasis on its possible use as an antianxiety agent." Patient trials would be conducted "to determine whether or not in addition to possible anti-anxiety activity [buspirone] will also be useful as an antipsychotic agent." The Master Study Plan submitted to the FDA stated "[buspirone] has a chlorpromazine type of action ... it would be useful in the treatment of agitation, anxiety and tension, personality disorders, psychotic conditions...." Id. at 62, 28 USPQ2d at 1951 (emphasis added).
 
 
 10
 From these statements the district court concluded that the "tranquilizing effects" referred to in the '776 patent included anxiolytic effects for neurotics as well as anti-psychotic effects. Because, as construed by the district court, the '776 patent disclosed buspirone as having an anxiolytic effect for neurotics, the court held it anticipated that use as claimed in the '763 patent and made that patent subject to invalidation under 35 U.S.C. Sec. 102.
 
 
 11
 We disagree that on this record "tranquilizing effects" as used in the '776 patent would have been understood to include anxiolytic effects in neurotics as a matter of law. Bristol-Myers submitted affidavits by psychiatrists specializing in neuropsychopharmacology, Drs. Samuel Gershorn and Donald Klein, which raise a genuine question of material fact as to whether the '776 patent would have been understood to have disclosed in 1969 that buspirone had anxiolytic properties in neurotics.
 
 
 12
 According to Gershorn, the term "tranquilizing effect" and the probable effect of buspirone must be interpreted in the context of the buspirone activity profile disclosed by the '776 patent because "in 1969, the term 'tranquilizing effect' could have a variety of possible meanings depending on the context in which it was used." (Gershorn Aff. at 7.) Gershorn contends that one skilled in the art would have understood buspirone to be an anti-psychotic drug and not an anxiolytic drug based on this information in the '776 patent: 1) the results of the rat shuttle box test which indicated anti-psychotic activity; and 2) buspirone's anti-emetic properties which were typical of anti-psychotic but not anxiolytic drugs. (Gershorn Aff. at 7-9.) According to Gershorn, even the comparison of buspirone to chlorpromazine would not have suggested to one skilled in the art that buspirone was useful as an anxiolytic agent in neurotics because the effectiveness of chlorpromazine in neurotic patients is attributable to its sedative activity which, as disclosed in the '776 patent, buspirone lacked. (Gershorn Aff. at 10.) Based on this analysis Gershorn determined that "a psychiatrist or neuropsychopharmacologist would have concluded that buspirone exhibited properties suggestive of potential anti-psychotic activity, but not anxiolytic activity, in humans." (Gershorn Aff. at 7.)
 
 
 13
 Klein's conclusions are similar. He states, "it is absolutely clear to me that the term 'tranquilizing activity' was used to refer to anti-psychotic activity"--based on the results of the shuttle box test and buspirone's anti-emetic properties. (Klein Aff. at 11-12.) Moreover, Klein concludes that the "tranquilizing effects similar to those produced by chlorpromazine" mentioned in the '776 patent "are not related to chlorpromazine's sedative activity but rather are those associated with its anti-psychotic effects" because buspirone lacks sedative activity. (Klein Aff. at 13, 20-21.)
 
 
 14
 The Gershorn and Klein affidavits raise a genuine dispute as to how one skilled in the art would have interpreted the '776 patent's specification in 1969. Both affidavits specifically discuss the tests and the properties of buspirone disclosed in the '776 patent that would have led one skilled in the art to conclude that buspirone would function as an anti-psychotic, but not an anxiolytic agent. For instance, both affidavits emphasize how buspirone's lack of sedative activity, expressly noted in the '776 disclosure, indicates buspirone would not have chlorpromazine's anxiolytic effect, in contrast to the district court's critical statement that nothing in the '776 patent implied that buspirone differed from chlorpromazine. The affidavit evidence also conflicts with statements made by Bristol-Myers to the FDA and with other evidence relied on by the district court concerning whether the similarity between buspirone and chlorpromazine pertains to chlorpromazine's anxiolytic properties. Resolving these evidentiary conflicts against Bristol-Myers was improper on summary judgment given that all factual inferences must be drawn in favor of the non-moving party. Scripps Clinic, 927 F.2d at 1576, 18 USPQ2d at 1010.
 
 
 15
 For these reasons, the grant of summary judgment invalidating the '763 patent is vacated, and this case is remanded to the district court for proceedings consistent with this decision. Whether the '763 patent is anticipated by the '776 patent could not be properly determined on summary judgment on the record before the district court.
 
 COSTS
 
 16
 Each party shall bear its own costs.
 
 
 
 [1]
 The broadest claim of the '763 patent reads:
 
 
 [1]
 A method for palliative treatment of neurosis in which anxiety symptoms are prominent which comprises administering a non-toxic anxiolytically effective dose of buspirone or a pharmaceutically acceptable acid addition salt thereof to a neurotic patient
 
 
 [2]
 These two patents issued in 1973 and 1976 respectively, from a single application in 1969. Because the '643 and the '776 patents have identical disclosures, we will refer throughout to the '776 patent rather than both