**WATSON PHARMACEUTICALS, INC.**

v.

**Jane E. HENNEY, M.D., etc.**

and

**Bristol–Myers Squibb Company**

**No. 00CV3516.**

United States District Court, D. Maryland.

Jan. 18, 2001.

Douglas B. Farquhar, John R. Fleder, Robert A. Dormer, Hyman, Phelps & McNamara, PC, Washington, DC, Edgar H. Haug, Barry S. White, Daniel G. Brown, Frommer Lawrence and Haug, LLP, New York City, for plaintiff.

Andrew E. Clark, U.S. Dept. of Justice, Washington, DC, for Jane E. Henney, M.D., defendant.

J. Hardin Marion, Tydings and Rosenberg, LLP, Baltimore, MD, Richard J. Stark, Evan R. Chesler, David R. Marriott, Cravath Swaine and Moore, New York City, for Bristol-Myers Squibb Co., defendant.

## MEMORANDUM OPINION

SMALKIN, District Judge.

In an attempt to balance the national and private interests competing in the arena of patented pharmaceuticals, Congress some time ago enacted the so-called "Hatch–Waxman Amendments," establishing a split-the-baby scheme under which holders of patents on "pioneer drugs" were extended the carrot of what amounts to extended patent protection to account for delays in FDA approval of a "pioneer drug," in exchange for being whipped with the stick of an expedited, coat-tail procedure for FDA approval of competing, generic equivalents of the patented pharmaceutical (called an ANDA), along with what amount to fast-track patent challenge procedures, too complex to detail here. *See* 21 U.S.C. sections 355, 360cc and 35 U.S.C. sections 156, 271, and 282. *See also, Tri–Bio Labs., Inc. v. United States,* 836 F.2d 135 (3d Cir.1987), *cert. denied,* 488 U.S. 818, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988).

As part of this scheme, a patent holder can inform the FDA of the issuance of a pharmaceutical patent within 30 days, which results in the FDA's publication of the furnished patent information in something called the "Orange Book." (One assumes that, at least before everything went virtual, there really was a book and that it was orange.) *See* 21 U.S.C. section 355(c)(2) and 21 C.F.R. section 314.53(d)(3). One of the important aspects of the FDA's listing of a patent in the Orange Book arises from the patent challenge procedures under the Hatch–Waxman Amendments. That is, listing triggers the right of the patent holder to sue the generic's maker for patent infringement, which carries with it a stay of the FDA's approval of the ANDA for up to 30 months, pending resolution of the patent challenge. *See* 35 U.S.C. section 271(e)(2)(A).

Indeed, the patent holder (Bristol–Myers Squibb (BMS)) and the generic manufacturer involved in this case are no strangers to litigation over a predecessor patent to the one whose Orange Book listing (discussed fully *post*) triggered this particular lawsuit. *See Bristol–Myers Squibb Co. v. Danbury Pharmacal, Inc.,* 825 F.Supp. 58 (S.D.N.Y.1993), *vacated,* 26 F.3d 138, 1994 WL 129751 (Fed.Cir.1994). The earlier patent issued to BMS ('763) covered buspirone HCL (marketed as BuSpar), which received FDA approval in 1986. Not having prevailed in the patent litigation over '763, Danbury's ANDA for generic buspirone has been held up pending the expiry of that patent's exclusivity period, which was November 21, 2000. That same day, BMS was issued a new patent, '365, comprising, according to the declaration BMS filed with the FDA for Orange Book listing, "a method of use patent covering, among other things, a method of using BuSpar for all of its approved indications." The practical effect of this was a decision by the FDA to hold in abeyance the ANDA of Danbury (and of other generic marketers, such as Mylan) for generic buspirone. Danbury, upset by the FDA's listing of the patent in the Orange Book and the concomitant stay of its ANDA, attempted to persuade the FDA to de-list the '365 patent, arguing that, as a matter of patent law (based on the holding in *Hoechst–Roussel Pharmaceuticals, Inc. v. Lehman,* 109 F.3d 756 (Fed.Cir.1997)), the '365 patent, claiming for a metabolite, could not claim a listed drug. The FDA sought the views of the interested parties. BMS's response was a clarified declaration to the FDA that the '365 patent claimed a method of using not only a buspirone metabolite, but the basic drug itself. The FDA determined, based on that declaration, that the '365 patent did not solely claim a metabolite, and thus was not directly affected by

*Hoechst–Roussel,* and it listed the patent in the Orange Book, effective as from November 21, 2000. In the meantime, Danbury filed this suit, which aims to obtain a mandatory injunction from the Court ordering the de-listing of the '365 patent (which would pop its ANDA back up from limbo for immediate approval), while the other generic seeker-after buspirone (Mylan) has filed an essentially identical suit in the District of Columbia. The matter is now pending in this Court on motions for injunctive relief as aforesaid and on motions for summary judgment. This is one of those cases in which no hearing is needed under Fed.R.Civ.P. 65, as there is no dispute of fact calling for resolution on *viva voce* testimony, *see Securities & Exchange Comm'n. v. Graye,* 156 F.Supp. 544, 547 n. 3 (S.D.N.Y.1957), and the parties' excellent briefs have obviated the need for oral argument. Local Rule 105.6, D. Md.

■ Several preliminary observations are in order. Even though this case tangentially involves a patent matter over which the Federal Circuit has jurisdiction and to which its legal standards apply, it is clear that the standards for injunctive relief and for assessment of the merits ought to be those of the Fourth Circuit. And, certainly, if the movant for a preliminary injunction is plainly entitled to no relief at all, such as where the party sought to be enjoined is plainly entitled to judgment in its favor as a matter of law under summary judgment criteria, even the Fourth Circuit's most plaintiff-favorable view of the "likelihood of success" factor in the injunctive relief setting, reserved for those applicants in whose favor the balance of harms decidedly tips, *i.e.,* that "grave or serious questions are presented," *Blackwelder Furn. Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 196 (4th Cir.1977), is not satisfied, as a question devoid of merit as a matter of law can be neither grave nor serious.

Thus, the Court will turn to the merits. The Court has concluded that the federal defendants are entitled to summary judgment, and that, accordingly, no injunctive relief is appropriate.

■ This action is, at base, a quest for judicial review of a federal agency's final decision. As such, it is governed by the Administrative Procedure Act (APA), 5 U.S.C. section 706. Under the APA, an agency's decision is entitled to deference, amounting to a presumption of validity, and can only be set aside on a showing that it is arbitrary, capricious, not in accordance with the law, or unsupported in fact. *See, generally, Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The judicial deference owed the agency in the interpretation of its own governing statutes and regulations is especially great. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

■ In this case, it is paramount to keep in mind that the FDA, in deciding to make an Orange Book listing, is *not* acting as a patent tribunal. It has no expertise—much less any statutory franchise—to determine matters of substantive patent law. In making its decision to list a patent, therefore, it is entirely appropriate and reasonable for the FDA to rely on the patentee's declaration as to coverage, and to let the patent infringement issues play out in other, proper arenas, as is the clear intent of the Hatch–Waxman Amendments. In fact, the legislation clearly reflects that Congress recognized that the FDA had a very limited, ministerial role in patent fights between patentees and generic marketers—that of taking information from the patentee, publishing that information in the Orange Book, and awaiting the institution and/or

outcome of patent litigation. Indeed, at least one court has explicitly recognized that the FDA's Orange Book listing, as it is not based (by statute, regulation, or practice) on any substantive evaluation of the patent, for which the FDA lacks the necessary expertise in the first place, is a matter to be settled in private litigation between the parties, not as part of an agency adjudication. *Ben Venue Labs., Inc. v. Novartis Pharmaceutical Corp.*, 10 F.Supp.2d 446, 456 (D.N.J.1998). Indeed, Mylan has such litigation pending (no, not the case in the District of Columbia referred to earlier, but a declaratory judgment patent case in the Northern District of West Virginia), and Danbury could institute one at any moment.

■ The plaintiff relies upon an earlier decision of this Court, *Pfizer v. FDA*, 753 F.Supp. 171 (D.Md.1990), for its argument that the FDA incorrectly listed the '365 patent. As pointed out, however, in *Ben Venue, supra*, 10 F.Supp 2d at 455, *Pfizer* was decided before the present FDA listing regulations were put in place, and, hence, is of doubtful continuing validity. In any event, the end result in *Pfizer* was the upholding of the FDA's interpretation of its own statute and regulations as they stood at the time. *Pfizer*, 753 F.Supp. at 175–78. In this case, under the regulations in force now, the Court concludes with no difficulty at all that the FDA's action in listing the '365 patent was plainly not, as a matter of law, in contravention of the well-settled standards for federal agency action so as to be vulnerable to being set aside on judicial review. Despite Danbury's invitations, it is not the business of the FDA or of this Court in an APA review, to adjudicate the merits of the scope and/or validity of the claims covered by the '365 patent under *Hoechst–Roussel* or otherwise. So long as the FDA is acting within the scope of law and regulation which it did here when it accepts the patentee's declaration, the Court has no

warrant to second-guess it. The FDA's action here under attack was not unreasonable, arbitrary, or capricious, but was, rather, a reasonable exercise of its statutory and regulatory powers. Thus, the federal defendants are entitled to summary judgment on the merits, and no injunction will issue.

As to the position of the defendant BMS, the Court has concluded that, as there is no relief sought directly against that defendant, and in that there is no longer any question of an injunction being issued that could impair its rights, the present case will be dismissed, as to it. Of course, that dismissal is without prejudice to the rights of either plaintiff or BMS in the matter of subsequent litigation over the listing of the '365 patent, of the sort discussed in *Ben Venue, supra*, but that litigation is not going to take place in this lawsuit.

An appropriate order will be entered separately.

### JUDGMENT ORDER

For the reasons stated in a Memorandum Opinion entered this date, it is, by the Court, this 18th day of January, 2001, ORDERED and ADJUDGED:

1. That the plaintiff's motion for any form of injunctive relief BE, and it hereby IS, DENIED;

2. That the motions of defendant Henney for summary judgment BE, and it hereby IS, GRANTED;

3. That judgment BE, and it hereby IS, ENTERED in favor of defendant Henney, against plaintiff, with costs;

4. That defendant Bristol–Myers Squibb BE, and it hereby IS, DISMISSED from this action, without prejudice, as stated in the aforementioned Opinion; and

5.  That the Clerk inform counsel of the entry of this Order and of the said Opinion.